**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

PNC Bank, National Association, Successor In Interest
Via Merger To National City Bank,

                    Plaintiff,  Case No. 2018-cv-3342

        v.

Wallace D. Lockard; Commonwealth Edison
Company

                    Defendants.

## MOTION FOR JUDGMENT OF FORECLOSURE AND SALE

NOW COMES the Plaintiff, PNC Bank, National Association, Successor In Interest Via Merger

To National City Bank, by its attorneys Crowley & Lamb, P.C., and moves the Court for the entry of a

Judgment of Foreclosure and Sale in its favor and against the Defendants

Wallace D. Lockard and Commonwealth Edison Company and as grounds thereof state:

As appears from the Affidavit of Plaintiff in support of this Motion attached here to as Exhibit

1, and from the pleadings and admissions on file, there is no genuine issue as to any material fact,

and the Plaintiff is entitled to a Judgment of Foreclosure and Sale in this case as a matter of law.


                    PNC Bank, National Association, Successor In Interest
                    Via Merger To National City Bank

                    By:  _/s/ Matthew L. Hendricksen_____
                              One of Its Attorneys

James M. Crowley (ARDC #6182597)
Matthew L. Hendricksen (ARDC#6296720)
PLUNKETT COONEY, P.C.
221 N. LaSalle Street, Suite 1550
Chicago, Illinois 60601
(312) 670-6900
jcrowleylamb@plunkettcooney.com
mhendricksen@plunkettcooney.com

PNC Bank, National Association, Successor In
Interest Via Merger To National City Bank,

                                Plaintiff, | Case No. 2018-cv-3342

           v. | Hon. Rebecca R. Pallmeyer

Wallace D. Lockard; Commonwealth Edison
Company | Magistrate Judge: Honorable M. David
Weisman.

                      Defendants.

## AFFIDAVIT OF MORTGAGEE IN SUPPORT OF MOTION FOR JUDGMENT OF FORECLOSURE AND SALE

I, Cory R. Baldwin, being first duly sworn on oath deposes and states that if sworn as a witness would testify as follows:

1.    That I have personal knowledge of the facts stated in this Affidavit and if sworn as a witness I could testify competently thereto.

2.    That I am a Vice President in the Asset Resolution Team with PNC Bank, National Association, successor to National City Bank, ("Plaintiff" or "PNC") and that in such capacity I am familiar with the books and records of Plaintiff; I have personally examined same; and I am duly authorized to make this Affidavit on behalf of Plaintiff.

3.    As a Vice President with PNC, I am charged with overseeing and managing certain loan accounts, including the Loan which is the subject of this lawsuit ("Loan"), which is evidenced by the Note (defined in ¶5) and secured by the Mortgage (defined in ¶5).

4.    As a result of my duties of overseeing and managing the Loan, I am familiar with

1


EXHIBIT 1

amounts due upon the Loan and resulting Judgment (defined in ¶11), as well as Plaintiff's collection efforts thereupon.

5.      That I am familiar with the following instrument to be foreclosed: A Mortgage (hereafter "Mortgage") executed on May 16, 2007 by Wallace D. Lockard ("Borrower"), as Mortgagor in favor of Plaintiff, as Mortgagee, and recorded against the property commonly known as 1913-17 S Jefferson Street, Chicago, Illinois ("Property") to secure an indebtedness in the sum of $100,000.00 as evidenced by a Promissory Note executed Borrower in favor of Plaintiff on July 6, 2007 (the "Note"). Copies of the Mortgage and Note are attached hereto as Exhibits A and B.

6.      PNC Bank, National Association, successor to National City Bank is the legal holder of said Note and Mortgage given as security therefore.

7.      The real estate conveyed by the Mortgage was fee simple.

8.      I am familiar with the books of original entry and accounts maintained by Plaintiff, for the collection due on the Loan.

9.      I am familiar with the current status of the Loan account.

10.     Defaults occurred under the terms of the Note and Mortgage due to Lockard's failure to pay the monthly installments due on the Note. Thereafter Plaintiff filed suit for breach of the Note and on December 13, 2017 judgment was entered in favor of Plaintiff and against Lockard in the amount of $145,534.94 (hereafter "Judgment") in the related case of 17-cv-05340 in the United State District Court, Northern District of Illinois before the Honorable Judge Gettleman ("Breach of Note Action"). Exhibit C.

11.     Subsequent to the date of the Judgment, Borrower has defaulted under upon the Mortgage for failure to pay amounts due on the Judgment.

2

12. Since the entry of the Judgment, Plaintiff has not received or collected any money due on the Judgment. As such the full amount of the Judgment remains due and owing to Plaintiff.

13. There is due and owing to the Plaintiff the following amounts:

JUDGMENT BALANCE THROUGH September 18, 2018:

| | |
|---|---|
| Judgment Balance entered 12/13/17 | $145,534.94 |
| Post Judgment Interest at 1.65% from 12/13/17 | $1,835.53 |
| Attorney Fees since 12/13/17 | $16,286.87 |
| **Total** | **$163,657.34** |

*Per Diem* after September 18, 2018: $6.58

WHEREFORE, affiant further sayeth naught.

I, Cory R. Baldwin, being first duly sworn on oath, state that I have read the foregoing Affidavit and believe the contents therein are true, in substance and fact.

Cory R. Baldwin, Vice President - Asset Resolution
PNC Bank, National Association

SUBSCRIBED AND SWORN TO
before me this 9ᵗʰ day of
October, 2018

NOTARY PUBLIC

SHARI LEE GIBBS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF CALHOUN
My Commission Expires Dec. 13, 2024.
Acting in the County of Kalamazoo

James M. Crowley, Esq. (ARDC #6182597)
Matthew L. Hendricksen, Esq. (ARDC #6296720)
Plunkett Cooney P.C.
221 N. LaSalle Street, Suite 1550
Chicago, IL 60601
Telephone: (312) 670-6900
jcrowley@plunkettcooney.com
mhendricksen@plunkettcooney.com
Open.26646.73619.20919315-1

3

# EXHIBIT A

RECORDATION REQUESTED BY:
National City Bank
Oak Brook
2021 Spring Road, Suite 150
Oak Brook, IL 60523

WHEN RECORDED MAIL TO:
National City Bank
Small Business Banking
101 West Washington Street,
700E
Indianapolis, IN 46255

SEND TAX NOTICES TO:
Wallace D. Lockard
1911 S Jefferson St, Apt 1
Chicago, IL 60616

Doc#: 0717103118 Fee: $46.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 06/20/2007 03:01 PM Pg: 1 of 12

**FOR RECORDER'S USE ONLY**

This Mortgage prepared by:
Edye Trudeau for National City Bank
National City Bank
2021 Spring Road, Suite 150
Oak Brook, IL 60523

# MORTGAGE

**MAXIMUM LIEN.** At no time shall the principal amount of indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $100,000.00.

**THIS MORTGAGE** dated 5-16-2007, is made and executed between Wallace D. Lockard, whose address is 1911 S Jefferson St, Apt 1, Chicago, IL 60616 (referred to below as "Grantor") and National City Bank, whose address is 2021 Spring Road, Suite 150, Oak Brook, IL 60523 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Cook County, State of Illinois:

SITUATED IN THE COUNTY OF COOK AND STATE OF ILLINOIS:

LOT 16 AND 17 IN AYERS AND HAMILTON A SUBDIVISION OF THE NORTH 3 ACRES OF LOT 2 IN BLOCK 37 IN CANAL TRUSTEE A SUBDIVISION OF THE WEST 1/2 AND AS MUCH OF THE SOUTH EAST 1/4 AS LIES WEST OF THE SOUTH BRANCH OF THE CHICAGO RIVER OF SECTION 21, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 1913 S Jefferson St, Chicago, IL 60616. The Real Property tax identification number is 17-21-324-016-0000 & 17-21-324-017-0000.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related

# MORTGAGE
## (Continued)

or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**REVOLVING LINE OF CREDIT.** Specifically, in addition to the amounts specified in the Indebtedness definition, and without limitation, this Mortgage secures a revolving line of credit and shall secure not only the amount which Lender has presently advanced to Grantor under the Note, but also any future amounts which Lender may advance to Grantor under the Note within twenty (20) years from the date of this Mortgage to the same extent as if such future advance were made as of the date of the execution of this Mortgage. The revolving line of credit obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Note and Related Documents.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STATUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any

## MORTGAGE
## (Continued)

other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished

## MORTGAGE
## (Continued)

to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage.

# MORTGAGE
## (Continued)

Page 5

Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain

# MORTGAGE
## (Continued)

proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as Default, and Lender may exercise any or all of its available remedies for Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations

# MORTGAGE
## (Continued)

under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**DEFAULT.** Default will occur if payment in full is not made immediately when due.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the

# MORTGAGE
## (Continued)

Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of

# MORTGAGE
## (Continued)

the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**WAIVER OF RIGHT OF REDEMPTION AND REINSTATEMENT .** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS MORTGAGE, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b) OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON GRANTOR'S BEHALF AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY. GRANTOR HEREBY WAIVES ALL RIGHTS TO REINSTATEMENT PROVIDED BY ANY LAW NOW EXISTING OR HEREINAFTER ENACTED .

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the

# MORTGAGE
## (Continued)

Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Wallace D. Lockard and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Grantor.** The word "Grantor" means Wallace D. Lockard.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means National City Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means Business Credit Line and Security Agreement dated $\underline{5-16-2007}$ in the original principal amount of $100,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory

# MORTGAGE
## (Continued)

note or agreement. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
Wallace D. Lockard

# MORTGAGE
### (Continued)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __Illinois__

COUNTY OF __Du Page__

) 
) SS
)

On this day before me, the undersigned Notary Public, personally appeared Wallace D. Lockard, to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___16th___ day of ___May___, 20 __07__.

By ___Manal Sughayer___     Residing at ___2007 Spring Rd.___

Manal Sughayer     Oak Brook, IL 60523
Notary Public in and for the State of ___Illinois___

My commission expires ___9-10-07___

OFFICIAL SEAL
MANAL SUGHAYER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/10/07

CRELOC 294288

LASER PRO Lending, Ver. 5.34.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - IL x:\CFIWIN\LPL\G03.FC FR-24413 PR-31

# EXHIBIT B



| Borrower: | Wallace D Lockard | Lender: | National City Bank |
|---|---|---|---|
| | 1911 S Jefferson St, Apt 1 | | Oak Brook |
| | Chicago, IL 60616 | | 2021 Spring Road, Suite 150 |
| | | | Oak Brook, IL 60523 |

Date. 5-16-2007

The above-named corporation, partnership, proprietorship, individual, or organization ("Borrower") is opening a Business Credit Line open-end credit account ("Account") with National City Bank (together with its successors and assigns, "Lender") and, intending to be legally bound, agrees that the following terms will apply to the Account.

**(1) Line of Credit**
The Account is a line of credit which may be used to obtain loans ("Advances") from time to time  Any amount repaid will again be available to borrow  Borrower's initial line of credit ("Credit Line") is $100,000.00  Lender may change the amount of the Credit Line at any time, in its sole discretion, by advising Borrower of such change

**(2) Advances**
Borrower may obtain Advances on the Account by issuing special Business Credit Line checks ("Checks") supplied by Lender, or by way of any other Lender-approved method  Checks must be ordered through the Lender  Each Check must be in a minimum amount of $500  Lender will charge the Checks directly against the Account  Borrower should notify Lender when Borrower needs more Checks  Borrower should also notify Lender immediately if any Checks are lost or stolen  (See "Stop Payment Orders" section.)

Lender may issue Borrower a Card or Cards for use with the Account.  Borrower hereby authorizes Lender to issue Borrower Card(s) for use with the Account  The word "Card" can mean one or more credit cards or Automatic Teller Machine (ATM) cards (if available)  Borrower may purchase goods or services from merchants who honor the Card  Borrower may obtain Advances from Lender or any other financial institution that honors the Card  Borrower may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances  Lender will charge all Advances to the Account.  If Borrower allows someone else to use Borrower's Card or PIN and Borrower wants to stop such use, Borrower must advise Lender in writing  If such other person has a Card or PIN, Borrower must return the Card with a written notice to Lender and/or request a new PIN from Lender

Borrower must notify Lender immediately if Borrower's Card(s) or PIN are lost or stolen, or Borrower believes that some person may be using Borrower's Card(s) or PIN without permission  Borrower will not use Borrower's Account after notifying Lender of loss, theft or unauthorized use of Borrower's Card(s) or PIN  Lender may terminate the use of Borrower's Card(s) or PIN if Borrower loses Borrower's Card(s) or PIN two times or more in a twelve-month period  Lender may also terminate the use of Borrower's Card(s) or PIN if Borrower's New Balance exceeds Borrower's Credit Line by 2% or more or if Borrower is over limit for more than one billing cycle

Lender will have no obligation to make an Advance, may return any Check unpaid or decline a Card transaction, and have no liability for such dishonor, under each of the following circumstances  If the Account has been terminated either by Borrower or Lender; if the resulting balance of the Account would exceed the Credit Line, or in the event the Account is in Default; and upon Lender's request, Borrower will return Checks and/or Cards

**(3) Finance Charges and Fees**
Advances are subject to finance charges from the date of transaction to the date payment is posted to the Account.  The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index.  The index in effect for each billing cycle shall be the "Prime Rate" of interest as published in the Money Rates Table of *The Wall Street Journal* on the 10th business day prior to the last day of the billing cycle, rounded upward, if necessary, to the nearest .001% ("Index")  The annual percentage rate is the Index plus 1.250%  The finance charge for each billing cycle be computed at the annual percentage rate divided by 12  However, in no event shall the annual percentage rate exceed the maximum rate, if any, permitted by law  The Lender figures the finance charge by applying the monthly periodic rate to the average daily balance of the Account (including current transactions)  To get the average daily balance, the Lender takes the beginning balance of the Account each day, adds any new Advances, and subtracts any payments, credits, fees, and unpaid finance charges.  This gives the Lender the daily balance.  Then, the Lender adds up all the daily balances for the billing cycle and divides by the total number of days in the billing cycle.  This gives the Lender the average daily balance

Borrower shall pay an annual fee to Lender of $250.00, whether or not Advances are made under the Account  This fee is not refundable  The fee is assessed in the billing cycle following the first anniversary of the opening of the Account and each year thereafter  The annual fee may be paid to Lender, at Lender's option, by Lender deducting such fee from the available and unused Credit Line.  In addition, the following other fees apply to the Account: (a)  A late charge of $40.00 or ten percent (10%) of the amount due, whichever is greater, if Borrower is more than ten (10) days late in paying any amount due hereunder and Lender does not require immediate payment of the whole amount outstanding hereunder (b)  An overlimit fee of $25.00 whenever the outstanding balance of the Account exceeds the Credit Line  Lender may charge an additional overlimit fee for each billing cycle in which the Account exceeds the Credit Line. (c)  A returned payment fee of $30.00 if a payment on the Account is returned to Lender unpaid because of insufficient funds, a closed account, stop payment, or any other reason  (d)  A returned check fee of $30.00 if Lender dishonors a Check under the "Advances" section of this Agreement. (e)  A stop payment fee of $30.00 for each stop payment order on a Check and a $30.00 fee for each renewal of a stop payment order  (f)  A photocopy fee of $5 for each copy supplied by Lender at Borrower's request. (g)  Recording fees and closing costs associated with any security interest or mortgage securing this Account, including fees paid to government officials and the costs of appraisal, survey, property report, document preparation, title insurance and flood insurance determination.  If Borrower is in Default (as defined in (16)) and Lender requires immediate payment of the whole amount outstanding hereunder or if this Agreement is terminated pursuant to (17), Borrower agrees to pay Lender interest on the remaining balance at the contractual rate in effect at the time of acceleration or termination plus three percent (3%) per annum  Lender does not lose any of its other rights under this Agreement whether or not it charges late payment or overlimit fees.  The application of any fee shall not cure the Default which initiated the fee

Regardless of any other provisions of this Agreement to the contrary (including any introductory or promotional interest rates), if Borrower fails to make two consecutive Minimum Payments by the due date, Lender may, at its discretion, if permitted by applicable law, increase the periodic

rate and annual percentage rate for all Advances (including existing balances and all future Advances) to a higher "Default Rate." The Default Rate is the contractual rate in effect at the time the Default Rate is imposed plus three percent (3%) per annum. The application of a Default Rate shall not cure the default that caused the Default Rate to be charged, nor shall it affect any of Lender's rights under the "Default" section of this Agreement. The Account may again be eligible for the annual percentage rate that would otherwise apply after Borrower has met the repayment requirements of this Agreement for three consecutive billing cycles. After three consecutive payments, the Account will be reviewed automatically. If all payments made were greater than or equal to the Minimum Payment required and were received by their respective due dates, the annual percentage rates for existing balances, as well as new Advances, will become the terms which would then apply to the Account had the two consecutive payments not been missed. However, the Account will no longer be eligible for any introductory or promotional rate.

**(4) Description of Personal or Real Property Securing Payment ("Property")**
☒ Mortgage on real estate with a street address of Real Property located at 1913 S Jefferson St, Chicago, IL 60616

**(5) Payment**
Borrower shall be liable for all Advances, finance charges, and other amounts charged to the Account. Borrower agrees to pay to Lender, at the address specified on each monthly statement ("Statement") and on or before the due date shown on such Statement, at least the minimum payment reflected on the Statement ("Minimum Payment") which shall be the greatest of (i) 1% of the New Balance as shown on each Statement, (ii) the periodic finance charges that accrued on the outstanding balance under this Agreement during the preceding billing cycle as shown on the Statement, or (iii) $100.00 (or whatever portion of $100.00 is necessary to pay Lender in full), plus any unpaid portion of previously billed Minimum Payments. Payments will be applied first to all unpaid finance charges then to all fees and other charges, and then to Advances.

☐ If this box is checked, Borrower authorizes Lender to debit Borrower's _____ account, number _____, each month for the amount of the Minimum Payment.

**(6) Authorized Signatures**
Borrower agrees to all provisions of this Agreement and acknowledges receipt of a copy of this Agreement, with all applicable blanks completed before Borrower signed below.

**(7) Use of Checks, Cards and Account**
Borrower agrees that all Advances, whether by Check, Card or telephone are or will be used for business or commercial purposes. The Account, Cards and Checks may not be used for lottery, betting or gambling transactions or for any illegal transactions. Borrower may authorize its employees, officers or agents ("Employees") to issue Checks or use a Card issued to such Employee only for the legitimate business expenses incurred in the ordinary course of their employment or agency with Borrower and Borrower agrees to take all necessary steps to insure that the Checks and Cards are used for no other purpose. Borrower shall be solely and completely responsible for the possession, use and control of Checks and Cards. Borrower agrees that it shall be bound by the acts of its Employees, and shall pay to Lender when due all amounts charged to the Account pursuant to the use of the Checks, the Cards or the Account by its Employees. Borrower agrees to indemnify Lender and hold Lender harmless against any loss incurred by Lender by reason of the use of a Check, a Card or the Account which is not in accordance with this Agreement. Borrower shall pay to Lender any amounts charged or incurred pursuant to the use of a Check, a Card or the Account that is not in accordance with this Agreement the same as if the use had been in accordance with this Agreement. Borrower agrees that it shall remain liable for Checks issued and Cards used by a former Employee even though that former Employee has ceased to have any authority to issue Checks or use Cards on the Account.

**(8) Unauthorized Use**
"Unauthorized Use" shall mean that use of a Check, a Card or the Account by a person other than an Employee or former Employee and from which neither the Borrower nor any Employee or former Employee receives any benefit. Use other than Unauthorized Use shall be deemed to be authorized. Unauthorized Use includes but is not limited to forgeries and alterations. Borrower shall notify Lender immediately if any Checks or Cards are lost or stolen. Borrower agrees to indemnify Lender and hold Lender harmless against any loss incurred by Lender by reason of Unauthorized Use occurring prior to Lender's receipt of notice of loss, theft, or possible Unauthorized Use by phone at 1-800-533-8596 or in writing to National City Card Services, P O Box 4092, Kalamazoo, Michigan 49003. Except as provided by law, the Borrower shall pay to Lender any amounts charged to the Account as a result of extensions of credit, or charges incurred pursuant to any Unauthorized Use which occurs prior to Lender's receipt of notice of loss, theft, or possible Unauthorized Use, the same as if the credit had been extended or charges incurred pursuant to the use of Checks or a Card by an Employee with full authority to use the Checks, the Card or Account. Unauthorized Use will be deemed to be the result of negligence on the part of Borrower. Lender shall be liable only if grossly negligent and in no event shall Lender be liable for any consequential, indirect or special damages.

**(9) Security Interest**
Borrower grants to Lender a security interest in the Property (including, without limitation, any accessions and all loss proceeds and unearned premiums of insurance covering the Property) to secure the payment of any amounts owed under this Agreement and all other obligations now or hereafter owing by the Borrower to Lender. However, if the Borrower is a proprietorship and the Property is the proprietor's dwelling it shall secure all other obligations now or hereafter owing by Borrower to Lender which are for business purposes only. Borrower represents and warrants that it is the owner of the Property and that the Property is not subject to any other mortgage, security agreement or other lien except any granted to Lender or disclosed to Lender in writing prior to the date of this Agreement.

**(10) Insurance**
Borrower must obtain insurance on the Property. Borrower may choose the person through whom such insurance is obtained. Written evidence of insurance, with Lender named as loss payee, will be delivered to Lender. If the security for this loan is a real estate mortgage, Borrower must maintain proper real estate insurance on the Property and flood insurance if required by law. If this loan is secured by other than a real estate mortgage, insurance must consist of Fire, Theft, Comprehensive and Collision satisfactory to Lender. Borrower may obtain extended warranty coverage, but such coverage is not required. Borrower irrevocably makes Lender Borrower's agent for adjustment of all insurance losses and settlement thereof for an amount Lender in good faith deems reasonable and to sign such proofs of loss, applications, receipts, settlements, releases and other papers necessary for collection of loss and for return of unearned premiums, and to endorse and collect any instrument payable to Borrower in connection with any of the above. All amounts Lender receives may, at its option, be applied to the indebtedness evidenced by this Agreement or used to repair or replace the Property. If Borrower fails to maintain such insurance, Lender may obtain insurance on the Property. The insurance obtained by Lender shall include that coverage which Lender, in its sole discretion, deems necessary

to protect Lender's interest in the Property  If Lender obtains the insurance, Borrower agrees to pay Lender the premium therefor plus interest thereon at the contractual rate  Borrower acknowledges Lender, as insured, may receive refunds or other remuneration which could affect the net cost of such coverage to Lender  Borrower agrees that in no case shall Borrower be entitled, directly or indirectly, to such refund or other remuneration.

**(11) Financial and Other Information**
Borrower agrees to provide to Lender the following financial information with respect to the Borrower and each guarantor of the obligations hereunder ("Guarantor") as and when requested, and in any event not less than once each year  (a) in the case of individuals, a copy of their annual federal income tax return for the most recent calendar year and a copy of their personal financial statement for the most recent calendar year in form and substance reasonably satisfactory to Lender, (b) in the case of other entities, the entity's annual financial statements for the most recent fiscal year in form and substance reasonably satisfactory to Lender and (c) in all cases, such other information in writing about Borrower's or Guarantor's financial condition, properties and operations as Lender may from time to time reasonably request. Borrower's exact legal name is as is set forth above at the beginning of this Agreement

**(12) Account Statements**
Lender will furnish Borrower a Statement at the end of each billing cycle at the end of which the Account has a "New Balance" which is a debit or credit balance of more than $1 or on which a finance charge has been imposed   "New Balance" is the sum of all outstanding Advances, fees, payments, other credits, debits, and finance charges. Card transactions and Checks that have been paid will be listed on each Statement, but actual paid Checks will not be returned  Borrower may request copies of paid Checks from Lender and a fee may be charged.  Borrower must examine each Statement to discover any errors or possible Unauthorized Use and Borrower must notify Lender in writing thereof within 60 calendar days after receipt of such Statement. Failure to notify Lender thereof in writing shall constitute acceptance by Borrower of the Statement.

**(13) Processing of Checks and Cards**
Lender shall pay the Checks presented and honor Card transactions when there is sufficient available credit on the Account  Lender may, at its option, charge the Account for Checks and Card transactions which cause an overlimit.  Borrower agrees that Lender may pay Checks and honor Card transactions in any order which Lender chooses  Lender reserves the right to charge non-customer payees a fee for cashing a Check.  Lender may pay antedated or postdated Checks on presentment and charge them against the Account without regard to their dates  Borrower agrees that Lender handles large numbers of items and that consistent with current industry standards Lender does not review maker and/or endorser signatures, dates, or alterations and that in so doing, Lender will be deemed to have exercised ordinary care in the processing of the Checks  Borrower agrees that Lender will not be bound by any restrictive legend appearing on the face of a Check.

**(14) Stop Payment Orders**
Lender agrees to honor an oral or written stop payment order against a Check received from Borrower within a reasonable time prior to payment. A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite Borrower's name and the Account number  Borrower agrees that it is current industry standard to process stop payment orders by means of computer technology  Accordingly, Borrower's failure to provide the exact identification of Account number and/or Check number in order to identify the Check to be stopped may result in it being paid if presented and/or the dishonor of another Check, and Lender will not be liable to Borrower in such event.  An oral or written stop payment order remains effective for thirteen months from the date Lender receives notice of the order  A stop payment order may be renewed for successive periods equal to its original period of effectiveness if Lender receives an oral or written renewal notice prior to the order becoming ineffective.  Errors in Borrower's name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on the written stop payment order shall relieve Lender from any liability for any mistaken payment or wrongful dishonor  Any errors on Lender's written acknowledgment of a stop payment order must be reported in writing to Lender's Customer Service Department within 10 calendar days of the written acknowledgment date  Lender shall not be liable for any mistaken payment or wrongful dishonor arising from Lender's error and occurring after the 10-day period, unless errors or inaccuracies are reported to Lender within the 10-day period  Borrower agrees to indemnify Lender and hold it harmless from any and all expenses incurred or damages suffered by Lender in honoring a stop payment order  Before Lender will release a stop payment order, Lender's Customer Service Department must receive a written request, signed by Borrower requesting the withdrawal of the order  Lender shall not be liable for any damages unless Lender has failed to act in good faith and exercise ordinary care.  Lender's acceptance of a stop payment does not mean that the Check has not yet been paid.  Lender shall have no liability resulting from the payment of a Check prior to its actual receipt of a stop payment order and reasonable time to process the order  To place stop payment orders, write to National City, P O. Box 1030, LOC R-KO1-D7, Southgate, Michigan 48195-0030, or call the Customer Service number printed on the Statement

**(15) Right of Setoff**
Lender has the right to deduct any amount owed by Borrower for a Minimum Payment which is more than 10 days past due and/or the entire unpaid amount owing on the Account (if the entire amount owing is due for any reason set forth in the following paragraph) from any deposit account of Borrower with Lender or from any other money Borrower has which is held by or due from Lender

**(16) Default**
Any of the following with respect to Borrower or any Guarantor of the Account shall constitute a default ("Default") hereunder  Insolvency, bankruptcy, dissolution, death, declaration of legal incapacity, issuance of an attachment or garnishment against any of its property, exceeding the maximum Credit Line established by Lender for the Account, failure to make any payment when due under this Agreement or under any other note or obligation to Lender, failure to provide current financial information upon request of Lender, the making of any false or misleading statement in this Agreement or on the application for credit or any financial statement provided to Lender, breach of any provision of this Agreement, or Lender in good faith believes that Borrower will not be able to meet the repayment requirements due to an adverse change in its financial circumstances. Upon the occurrence of a Default, Lender shall not be obligated to make Advances or honor any Checks and the entire amount owing on the Account shall, at Lender's option, become immediately due and payable without demand or notice except that in the case of a Default due to Borrower's insolvency or bankruptcy, the entire amount owing on the Account shall automatically become immediately due and payable without demand or notice  Interest after Default, whether prior to or after judgment by a court of competent jurisdiction, shall continue upon the outstanding balance until paid in full, at the higher of the rate provided in this Agreement or the rate otherwise permitted by law  Borrower agrees to pay upon demand all of Lender's costs and expenses, including without limitation court costs and reasonable attorney's fees for Lender's own salaried lawyers or independent counsel that it hires, incurred in connection with the enforcement of this Agreement or the enforcement or protection of Lender's rights in the Property  Borrower agrees to destroy all Checks and Cards upon

termination.

### (17) Modification or Termination

Lender may terminate the Account or any Card or Checks by written notice to the Borrower, or as otherwise permitted by law, with or without cause. Upon termination by Lender, Borrower will be obligated to notify its Employees and destroy all Checks and/or Cards, or upon Lender's request, return them to Lender, and to pay immediately in full all amounts outstanding on the Account. Lender may change the terms of this Agreement at any time and from time to time without notice unless notice is required by law. Upon a change in terms, the new terms will apply to all new extensions of credit, and to the outstanding balance in the Borrower's Account, unless Lender specifies otherwise. Borrower may terminate the Account only upon written notice received by Lender. Such notice shall be signed by an authorized officer or agent of the Borrower, must contain Borrower's name, address and account number and be sent to the Customer Service address printed on the Statement.

### (18) JURY WAIVER

BORROWER HEREBY, AND EACH HOLDER OF THIS AGREEMENT, BY TAKING POSSESSION THEREOF, KNOWINGLY AND VOLUNTARILY WAIVES THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER WRITING RELATED TO THIS AGREEMENT

### (19) Jurisdiction and Venue

Any action, proceeding or counterclaim at any time arising under or in connection with this Agreement or any other writing related hereto may be brought in any federal or state court located in the county in which Lender's office (at the address set forth above) is located. Borrower hereby unconditionally submits to the jurisdiction of any such court with respect to any such action, proceeding or counterclaim and hereby waives any objection Borrower may now or hereafter have to the venue of any such action, proceeding or counterclaim brought in any such court.

### (20) Other Provisions

(a) Borrower will keep the Property insured and in good condition and will promptly pay all taxes and license fees, and all repair, maintenance and preservation costs pertaining to the Property. (b) Upon Lender's request, Borrower will promptly deposit with Lender the certificate of title or any other documents Lender may need to perfect its security interest. (c) Without Lender's prior written approval, Borrower will not sell, lease, or otherwise dispose of, nor permit any encumbrance on the Property, nor will Borrower permanently remove nor permit removal of the Property to another state or jurisdiction. (d) Borrower will not use the Property for any unlawful purpose. (e) If the Property is personal property, it will not be so attached or affixed to real property that it becomes a fixture without the Lender's prior written consent. (f) Borrower may not voluntarily or involuntarily assign any of its rights in the Account. (g) Borrower agrees to promptly notify Lender of any change in its name, type of organization, organizational identification number, state of incorporation, formation or registration or the address of its chief executive office or principal residence, or of any merger, reorganization, or consolidation. (h) Except as otherwise prohibited by law, Borrower and any Guarantor agree and consent that Lender and its affiliates (collectively, "National City"), may provide to others information about Lender's transactions and experiences with Borrower and/or any Guarantor. Also, Lender may share with its affiliates all information about Borrower and any Guarantor for the purposes, among other things, of evaluating credit applications or offering products and services that National City believes may be of interest to Borrower or Guarantor. Borrower also agrees that Lender may provide personal data to Visa U S.A., its Members, or their respective contractors for the purpose of providing Emergency Cash and Emergency Card Replacement Services. (i) Lender may delay enforcing any of its rights under this Agreement without losing them. (j) Lender may accept late payments or partial payments even though marked "payment in full" without losing any of its rights under this Agreement. (k) This Agreement and the use of the Account, Credit Line, Checks and Cards shall be governed by and construed in accordance with the law of the State of Illinois. (l) If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there. (m) Borrower irrevocably makes Lender Borrower's agent to sign on Borrower's behalf all documents in connection with this Agreement including, without limitation, instruments payable to Borrower, applications, receipts, settlements, financing statements, releases, certificates of title and proofs of loss. This agency shall be coupled with an interest and shall not be revoked by death, dissolution, incompetency or incapacity. (n) If this Agreement is signed by more than one person, each person may draw Checks on the Account but each person will be issued their own Card (which may only be used by that person). Each person signing this Agreement is jointly and severally liable for all Advances and charges on the Account and any such person may direct Lender not to make further Advances on the Account; however, reinstatement will only be made on the joint request of all signers. (o) Charges from foreign merchants and financial institutions may be made in foreign currency. Lender will bill in U S. Dollars based on the exchange rate on the day Lender settles the transaction plus any special currency exchange charges. In the case of VISA Accounts, the exchange rate applied to each such transaction is a rate selected by VISA from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate VISA itself receives, or the government-mandated rate in effect for the applicable central processing date. In addition, Lender will charge a foreign transaction fee of 1% of the converted amount. Because of the special charges and possible differences in exchange rates between the time Lender settles and the time the transaction was initiated, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made. (p) Borrower will, at Borrower's expense, upon each request of Bank, (i) file, and hereby authorizes Bank to file, from time to time such financing statements and other writings in such public offices as Bank may require or deem advisable containing a description of the Property, Borrower's federal taxpayer identification number, social security number and/or state organizational or registration number, if any, or any other information as Bank may require or deem advisable, (ii) place a legend on all chattel paper indicating that Bank has a security interest in the chattel paper and (iii) comply with every other requirement deemed necessary by Bank for the perfection and protection of its security interest, mortgage or other lien on the Property

### (21) Warrant of Attorney (Confession of Judgment)

The borrower and each Guarantor hereof jointly and severally authorize any attorney at law to appear in any Court of Record in the State of Illinois or any other State or Territory of the United States after the indebtedness evidenced by and arising under this Agreement becomes due and admit the maturity of this Agreement, the amount due thereon, and the jurisdictional facts thereof, and waive the issuing and service of process, and confess judgment against such Borrower and/or Guarantor in favor of the holder of this Agreement for the amount then appearing due and costs of suit (including, but not limited to, attorneys' fees) and thereupon to waive all errors, rights of appeal and stay of execution. This is a joint and several warrant of attorney. Borrower and each Guarantor hereby waive and release any and all claims or causes of action which such Borrower and/or Guarantor might have against any attorney acting under the terms of the authority which such Borrower and/or Grantor has granted herein arising out of or connected with the confession of any judgment. Should Borrower or any Guarantor enter an appearance in such cause of action and commence any proceeding to open or vacate a judgment taken by confession hereunder and seek to defend against that judgment, such Borrower and/or Guarantor shall be liable for and hereby agrees to pay all additional expenses of Bank

including attorneys' fees, expenses and court costs incurred in connection with the collection of the obligations evidenced by this Agreement and all costs of any nature incurred by Bank under any of the documents executed in connection with this Agreement

X _____
Wallace D. Lockard, Individually

### GUARANTY OF PAYMENT - WAIVER OF RIGHTS

For value received and intending to be legally bound, the undersigned ("Guarantor") jointly and severally guarantees the prompt payment of the indebtedness evidenced by and arising under the above Agreement when each payment becomes due, and approves all the provisions of the above Agreement. Guarantor's liability under this Guaranty shall remain in effect until the indebtedness evidenced by this Agreement is fully paid or until Lender gives Guarantor a written release Guarantor agrees that: (1) Guarantor's liability shall remain in effect even if Lender agrees to changes in basic terms of the Agreement without Guarantor's consent, such as (a) renewals or extensions of time, (b) releases of Guarantor no notice of Default, no notice of any change in basic terms of the Agreement nor any other notice of any kind, and (3) Lender may security or other obligors other than Guarantor, or (c) changes in the rate or method of computing interest, and (2) Lender need give proceed directly against Guarantor, whether or not Lender shall have first made any presentment or demand for payment to anyone and whether or not Lender proceeds against anyone else or against security (if any), and (4) Guarantor will not use, and Guarantor hereby waives, any defense to Guarantor's direct and absolute obligation to pay the indebtedness evidenced by this Agreement when due, together with any interest accruing on the indebtedness evidenced by this Agreement. To the extent that Borrower or any other person liable for all or any part of the indebtedness evidenced by this Agreement makes a payment or payments to the Lender, which payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be paid to a trustee, receiver or any other party under any bankruptcy act or any other law, then to the extent of such payment, the obligation of the Guarantor hereunder to make such payment shall remain in full force and effect as if such payment had not been made Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty Guarantor agrees to provide updated financial information to Lender from time to time upon Lender's request for the duration of the credit facility evidenced by the Agreement. Guarantor authorizes Lender to obtain information from others from time to time concerning Guarantor's credit and trade standing, including Guarantor's personal credit report and other relevant information impacting the credit facility

The borrower and each Guarantor hereof jointly and severally authorize any attorney at law to appear in any Court of Record in the State of Illinois or any other State or Territory of the United States after the indebtedness evidenced by and arising under this Agreement becomes due and admit the maturity of such Agreement, the amount due thereon, and the jurisdictional facts thereof, and waive the issuing and service of process, and confess judgement against such Borrower and/or Guarantor in favor of the holder of such Agreement for the amount then appearing due and costs of suit (including, but not limited to, attorneys' fees) and thereupon to waive all errors, rights of appeal and stay of execution This is a joint and several warrant of attorney Borrower and each Guarantor hereby waive and release any and all claims or causes of action which such Borrower and/or Guarantor might have against any attorney acting under the terms of the authority which such Borrower and/or Grantor has granted herein arising out of or connected with the confession of any judgment. Should Borrower or any Guarantor enter an appearance in such cause of action and commence any proceeding to open or vacate a judgment taken by confession hereunder and seek to defend against that judgment, such Borrower and/or Guarantor shall be liable for and hereby agrees to pay all additional expenses of Bank including attorneys' fees, expenses and court costs incurred in connection with the collection of the obligations evidenced by this Agreement and all costs of any nature incurred by Bank under any of the documents executed in connection with this Agreement.

X _____
Guarantor

X _____
Guarantor

# EXHIBIT C



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

PNC Bank, National Association, Successor In
Interest Via Merger To National City Bank,

                           Plaintiff,

              v.

Wallace D. Lockard,

                        Defendants.

Case No. 17 cv 05340

Assigned Judge: Robert W. Gettleman

Magistrate Judge: Mary M. Rowland

## ORDER

This matter coming before the court on Plaintiff's continued motion for default judgment (doc. 12), due noticing being given, defendant previously being given leave to respond to the motion (doc. 18) but failing to do so, and defendant failing to answer the complaint or appear in court on December 13, 2017, IT IS HEREBY ORDERED:

1. Plaintiff's motion for default is granted and judgment is hereby entered in favor of Plaintiff and against Defendant Wallace D. Lockard, in the amount of $145,534.94.

Dated 12/13/17

Judge Robert W. Gettleman

James M. Crowley (ARDC #6182597)
Matthew L. Hendricksen (ARDC#6296720)
PLUNKETT COONEY, P.C.
221 N. LaSalle Street, Suite 1550
Chicago, Illinois 60601
(312) 670-6900
jcrowley@plunkettcooney.com
mhendricksen@plunkettcooney.com